**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ADRIAN DOMINIC DICKERSON,

                Petitioner,

vs.                                                        Case No.:    3:16-cv-732-J-34MCR
                                                                                    3:10-cr-105-J-34MCR

UNITED STATES OF AMERICA,

                Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Adrian Dominic Dickerson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1; Motion to Vacate) and Memorandum of Law (Civ. Doc. 2; Memorandum).[1] Dickerson contends that his conviction under 18 U.S.C. § 924(c) for brandishing a firearm in furtherance of a crime of violence is unconstitutional in light of Johnson v. United States, 135 S. Ct. 2551 (2015). The United States moved to dismiss the Motion to Vacate as untimely (Civ. Doc. 7; Motion to Dismiss), and Dickerson responded (Civ. Doc. 8; Response to Motion to Dismiss). On June 1, 2018, the Court instructed the United States to file a supplemental response to address two questions:

1. Whether any of the crimes Dickerson brandished a firearm in furtherance of, specifically those contained in Counts Three, Five, and Six of the Indictment, qualify as "crimes of violence" under the "use-of-force" clause in 18 U.S.C. § 924(c)(3)(A); and

---

[1] Citations to the record in the underlying criminal case, United States vs. Adrian Dominic Dickerson, No. 3:10-cr-105-J-34MCR, are denoted as "Crim. Doc. __." Citations to the civil § 2255 case, No. 3:16-cv-732-J-34MCR, will be denoted as "Civ. Doc. __."

2. If the answer to Question One is negative, whether the "risk-of-force" clause in § 924(c)(3)(B) is unconstitutionally vague in light of <u>Sessions v. Dimaya</u>, 138 S. Ct. 1204 (2018), and <u>Johnson</u>, 135 S. Ct. 2551.

(<u>See</u> Civ. Doc. 10; Supplemental Briefing Order). The United States filed a supplemental response (Civ. Doc. 12; Government's First Supplemental Response), and Dickerson filed a reply (Civ. Doc. 17; Dickerson's Reply).

In the meantime, the Court stayed the proceedings pending the United States Supreme Court's decision in <u>United States v. Davis</u>, No. 18–431. The Supreme Court issued its opinion on June 24, 2019, which resolved the second question in this Court's Supplemental Briefing Order. In <u>Davis</u>, the Supreme Court held that 18 U.S.C. § 924(c)(3)(B)'s risk-of-force clause is unconstitutionally vague, and that the statute cannot be saved by reading it as applying to a defendant's real-word conduct. <u>United States v. Davis</u>, 139 S. Ct. 2319, 2323-24 (2019). Thereafter, Dickerson and the United States each filed additional briefs addressing the effect of <u>Davis</u>, which the Court has considered. (Civ. Doc. 23; Dickerson's First Supplemental Reply, Civ. Doc. 26; Government's Second Supplemental Response, Civ. Doc. 29; Dickerson's Second Supplemental Reply). Thus, the case is ripe for a decision and the stay is due to be lifted.

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that a hearing is not necessary to resolve the merits of this action. See <u>Rosin v. United States</u>, 786 F.3d 873, 877 (11th Cir. 2015) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively

---

[2]     Rule 8(a) of the Rules Governing Section 2255 Proceedings requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

contradicted by the record or patently frivolous, or if in assuming the facts that he alleges are true, he still would not be entitled to any relief); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Dickerson's Motion to Vacate is due to be denied.

## I.    Background

On April 20, 2010, a grand jury sitting in the Middle District of Florida returned an Indictment charging Dickerson and a co-defendant, Brian Lamont Timmons, with a litany of offenses. (Crim. Doc. 1; Indictment). In Count One the United States charged Dickerson with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and (b)(3). In Counts Two and Four the United States charged him with aiding and abetting Hobbs Act robbery, in violation of §§ 1951(a), (b)(1), and (b)(3) and § 2. In Counts Three and Five the United States charged Dickerson with aiding and abetting robbery of United States property by putting the victim's life in jeopardy through the use of a dangerous weapon, in violation of § 2114(a) and § 2. In Count Six the United States charged him with assaulting a federal agent with a deadly and dangerous weapon, in violation of § 111(b).[4] In Count Seven the United States charged him with brandishing a firearm in furtherance of a crime of violence, in violation of § 924(c), where the crime of violence was each offense charged in Counts One through Six. Finally, in Count Nine the

---

[3]    Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

[4]    The Indictment does not cite subsection (b) of § 111, but the reference to using a deadly or dangerous weapon establishes that the offense charged was under § 111(b).

United States charged Dickerson with possession of a firearm by a convicted felon, in violation of § 922(g).

Dickerson signed a written plea agreement, in which he pled guilty to Counts One, Three, Five, Six, Seven, and Nine of the Indictment. (Crim. Doc. 54; Plea Agreement at 1-2, 5-7, 18-20).[5] Dickerson's guilty plea to brandishing a firearm under § 924(c) incorporated as the "crime of violence" each offense charged in Counts One through Six. Plea Agreement at 6, 20; see also Plea Tr. at 22-25, 57. The Court sentenced Dickerson to a total term of 184 months' imprisonment. (Crim. Doc. 76; Amended Judgment). The sentence consisted of concurrent terms of 100 months' imprisonment as to each of Counts One, Three, Five, Six, and Nine, plus a consecutive 84-month sentence as to the § 924(c) charge in Count Seven.[6] Dickerson did not appeal the sentence.

Over five years after the Court entered the Amended Judgment, Dickerson filed the instant Motion to Vacate. Dickerson contends that his conviction for brandishing a firearm in furtherance of a crime of violence, in violation of § 924(c), is invalid in light of Johnson, 135 S. Ct. 2551, as well as Davis, 139 S. Ct. 2319.

---

[5]     Like the Indictment, the Plea Agreement does not cite subsection (b) of § 111 in reference to Count Six. However, the Plea Agreement refers to the 20-year maximum prison sentence applicable under § 111(b), Plea Agreement at 3, and Dickerson admitted that he "used a deadly or dangerous weapon" to forcibly assault a federal officer, id. at 6, 19. (See also Crim. Doc. 97; Plea Transcript at 23, 56). Thus, the Plea Agreement shows that Dickerson pled guilty to a violation of 18 U.S.C. § 111(b) rather than § 111(a).

[6]     The Court also sentenced Dickerson to a term of 100 months' imprisonment as to Count One of the indictment in a separate case, United States v. Adrian Dominic Dickerson, No. 3:10-cr-194-J-34MCR, but the Court ran that sentence concurrently with the sentences on Counts One, Three, Five, Six, and Nine from the indictment in the instant case. Amended Judgment at 2.

## II.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A prisoner's challenge to his conviction and sentence under 18 U.S.C. § 924(c) is cognizable on collateral review. Buggs v. United States, 153 F.3d 439, 445 (7th Cir. 1998); see also In re Pinder, 824 F.3d 977 (11th Cir. 2016) (granting prisoner's application to file a second or successive motion to vacate to challenge his § 924(c) conviction and sentence).

The Court assumes, for purposes of this decision, that Dickerson's Motion to Vacate is timely under 28 U.S.C. § 2255(f). Nevertheless, the Motion is due to be denied on the merits because Dickerson's § 924(c) conviction does not depend on § 924(c)(3)'s risk-of-force clause. The predicate offenses underlying the § 924(c) conviction – aiding and abetting robbery with a dangerous weapon, assaulting a federal agent with a deadly or dangerous weapon, and aiding and abetting Hobbs Act robbery – are crimes of violence under § 924(c)(3)'s use-of-force clause.

5

But before going further, the Court pauses to address two issues raised by the fact that when Dickerson pled guilty to brandishing a firearm in furtherance of a crime of violence under Count Seven, Count Seven bundled Counts One through Six together as the predicate "crime of violence." The first issue is that Dickerson pled guilty only to Counts One, Three, Five, and Six, but he did not plead guilty to Counts Two and Four themselves (aiding and abetting Hobbs Act robbery). Nevertheless, for purposes of Count Seven, Dickerson did admit that Counts Two and Four were crimes of violence in furtherance of which he brandished a firearm. The Eleventh Circuit has held that a "conviction under section 924(c) does not require either that the defendant be convicted of or charged with the predicate offense." United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005). "Instead, § 924(c) requires only that the predicate crime be one that may be prosecuted," a requirement the government can satisfy by "show[ing] that the defendant used or carried a firearm during and in relation to a crime of violence or drug trafficking crime." In re Navarro, 931 F.3d 1298, 1302 (11th Cir. 2019) (internal citations omitted). Thus, although Dickerson did not plead guilty to Counts Two and Four, by admitting that Counts Two and Four were predicate offenses for the § 924(c) charge, those offenses may also be considered as qualifying crimes of violence if the factual basis was sufficient to conclude that Dickerson committed those offenses.

Second, Dickerson asserts in his Second Supplemental Reply (Civ. Doc. 29) that because Count Seven incorporated multiple offenses as the predicate crime of violence (i.e., Counts One through Six), Count Seven of the Indictment was duplicitous. Second Supplemental Reply at 2 (citing In re Gomez, 830 F.3d 1225, 1227 (11th Cir. 2016)). In Gomez, the Eleventh Circuit held that a single § 924(c) charge that incorporated multiple

offenses as the predicate crime of violence or drug trafficking crime was duplicitous. 830 F.3d at 1227. In that case, count 5 of the indictment charged the defendant "with carrying and possessing a firearm 'in relation to a crime of violence and a drug trafficking crime,' and referred to two drug trafficking crimes (Counts 1 and 2); conspiracy to commit Hobbs Act robbery (Count 3); as well as the crime of attempted Hobbs Act robbery (Count 4), presumably offering each as a possible predicate for the § 924(c) charge." Id. at 1226-27. Following trial, the jury found the defendant guilty of the § 924(c) charge but did not specify the predicate crime of violence or drug trafficking crime. See id. at 1227. Thus, there was a risk that the jury did not unanimously agree on what crime constituted the predicate offense, and there was uncertainty about which crime did in fact constitute the predicate offense. Id. However, this concern does not apply to Dickerson because under his Plea Agreement, he admitted that each of the offenses charged in Counts One through Six was a predicate crime of violence. Plea Agreement at 6, 20; Plea Tr. at 22-25, 57. Thus, unlike with the jury's verdict in Gomez, there is no uncertainty as to which offenses constituted the predicate offense for the § 924(c) charge. Additionally, by pleading guilty to Count Seven of the Indictment, Dickerson waived any argument that the charge was duplicitous. United States v. Fairchild, 803 F.2d 1121, 1124 (11th Cir. 1986); United States v. Falgout, 325 F. App'x 775, 776 (11th Cir. 2009). Accordingly, Dickerson has waived any challenge to the duplicity of the Indictment, and his guilty plea eliminates any risk of uncertainty about what offenses constituted the predicate crime of violence for the § 924(c) charge.[7]

---

[7]     Relying on the categorical approach and the rule of lenity, among other things, Dickerson also argues that the Court must presume he committed only the least of the predicate offenses listed in Count Seven, conspiracy to commit Hobbs Act robbery. Second Supplemental Reply at 2-5 (citing, inter alia, United States v. Howard, 742 F.3d 1334 (11th Cir. 2014); United States v. Estrella, 758 F.3d 1239 (11th Cir. 2014)). Putting aside other problems with these arguments, such

### A.  Section 924(c), <u>Johnson</u>, <u>Dimaya</u>, and <u>Davis</u>

Under 18 U.S.C. § 924(c), a person who brandishes a firearm in furtherance of a "crime of violence" or a "drug trafficking crime" is subject to a mandatory minimum prison sentence of seven years, which must be consecutive to any sentence for the underlying crime of violence or drug trafficking crime. 18 U.S.C. § 924(c)(1)(A)(ii). The term "crime of violence" means an offense that is a felony and--

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

<u>Id.</u>, § 924(c)(3). Subsection (A) is referred to as the "elements clause" or the "use-of-force clause," and subsection (B) is referred to as the "residual clause" or the "risk-of-force" clause. <u>Ovalles v. United States</u>, 905 F.3d 1231, 1234 & n.1 (11th Cir. 2018) (en banc) ("<u>Ovalles II</u>"), <u>abrogated by</u> <u>Davis</u>, 139 S. Ct. 2319.

In <u>Johnson v. United States</u>, the Supreme Court held that language in the Armed Career Criminal Act (ACCA) that resembled § 924(c)(3)'s risk-of-force clause was unconstitutionally vague. <u>See</u> <u>Johnson</u>, 135 S. Ct. at 2563. The ACCA is a recidivist statute, which imposes a 15-year mandatory minimum prison sentence on anyone who possesses a firearm after receiving three or more convictions for a "serious drug offense" or a "violent felony," or both, committed on different occasions. <u>See</u> 18 U.S.C. § 924(e)(1).

---

a presumption is inapposite because Dickerson admitted that he actually committed each of the crimes of violence alleged in Counts One through Six for purposes of pleading guilty to Count Seven. Plea Tr. at 57.

The ACCA defines the term "violent felony" to include "any crime punishable by imprisonment for a term exceeding one year" that –

> (i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)   is burglary, arson, or extortion, involves use of explosives, <u>or otherwise involves conduct that presents a serious potential risk of physical injury to another</u>[.]

<u>Id.</u>, § 924(e)(2)(B) (emphasis added). The last fifteen words of subsection (ii), which are emphasized above, constitute the ACCA's "residual clause." <u>Beeman v. United States</u>, 871 F.3d 1215, 1218 (11th Cir. 2017) (citation omitted). The <u>Johnson</u> Court focused on two features of the residual clause that, combined, create "hopeless indeterminacy" in deciding whether the clause applied to a prior conviction: (1) a hazy "serious potential risk" standard combined with (2) use of the so-called categorical approach, which "ties the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements," and thus "leaves grave uncertainty about how to estimate the risk posed by a crime." <u>Johnson</u>, 135 S. Ct. at 2557-58. But

> the Court made clear that application of the categorical approach was the hinge on which its vagueness determination turned: "It is one thing," the Court stressed, "to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction" of the sort required by the categorical approach. Continuing in the same vein, the Court reiterated that "[a]s a general matter, we do not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct."

<u>Ovalles II</u>, 905 F.3d at 1238 (internal citations omitted) (quoting <u>Johnson</u>, 135 S. Ct. at 2558, 2561). The Supreme Court did "not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." <u>Johnson</u>, 135 S. Ct. at 2563. In <u>Welch v. United States</u>, 136 S. Ct. 1257 (2016), the

Supreme Court made its ruling in Johnson retroactively applicable to cases on collateral review.

Then, in Sessions v. Dimaya, 138 S. Ct. 1204 (2018), the Supreme Court extended Johnson's holding to the definition of the phrase "crime of violence" found in 18 U.S.C. § 16(b), as that statute is applied in the immigration context. Section 16(b) defines the term "crime of violence" to mean "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). This language is similar to the ACCA's residual clause and virtually identical to § 924(c)(3)'s risk-of-force clause. The Supreme Court reasoned that the same two features that doomed the ACCA's residual clause plagued § 16(b): (1) an imprecise "substantial risk" standard combined with (2) application of the categorical approach. Dimaya, 138 S. Ct. at 1215-16, 1223. As in Johnson, the Dimaya Court did not cast doubt on the constitutionality of a qualitative, "non-numeric standard" as applied to real-world conduct. Id. at 1215. Rather, it said that the problem comes from "applying such a standard to a 'judge-imagined abstraction' – i.e., 'an idealized ordinary case of the crime.' It is then that the standard ceases to work in a way consistent with due process." Id. at 1215-16 (internal citation omitted) (quoting Johnson, 135 S. Ct. at 2558, 2561).

Following Johnson and Dimaya, the Supreme Court in Davis confronted the fate of § 924(c)(3)(B). In Davis, all sides agreed that § 924(c)(3)(B) would be doomed as unconstitutionally vague if the categorical approach were applied. Davis, 139 S. Ct. at 2324, 2326-27. But the government argued that § 924(c)(3)(B) could be saved by reading the statute as applying to the specific facts of a defendant's actual conduct. Id. at 2327.

However, upon examining the text and history of § 924(c), the Supreme Court rejected the government's interpretation and found that § 924(c)(3)(B) required application of the categorical approach. Id. at 2327-32. Ultimately, the Supreme Court concluded that § 924(c)(3)'s risk-of-force clause, just like the ACCA's residual clause and § 16(b), was void for vagueness. Id. at 2336. Notably, as in Johnson, the Court did not question the validity of the statute's elements clause, § 924(c)(3)(A). The Eleventh Circuit later held that Davis announced a substantive new rule that applies retroactively on collateral review. In re Hammoud, 931 F.3d 1032, 1038-39 (11th Cir. 2019).

**B. Dickerson's § 924(c) Conviction Does Not Implicate the Risk-of-Force Clause**

Although § 924(c)(3)(B) is void for vagueness, that does not mean that Dickerson's conviction under § 924(c) is unlawful. When Dickerson pled guilty to brandishing a firearm in furtherance of a crime of violence, his plea incorporated as the "crime of violence" each offense charged in Counts One through Six of the Indictment. Dickerson further pled guilty to Counts One, Three, Five, and Six, i.e., conspiracy to commit Hobbs Act robbery (Count One), aiding and abetting robbery of United States property by putting the victim's life in jeopardy through the use of a dangerous weapon (Counts Three and Five), and assaulting a federal agent with a deadly or dangerous weapon (Count Six). Additionally, in Counts Two and Four the United States charged Dickerson with aiding and abetting Hobbs Act robbery, and although he did not plead guilty to these charges, he did admit committing the charged conduct. Plea Agreement at 20; Plea Tr. at 57. If any one of those offenses qualifies as a crime of violence under § 924(c)(3)'s "use-of-force" clause then § 924(c)(3)'s "risk-of-force" clause would be irrelevant. Because three of Dickerson's offenses – aiding and abetting robbery of United States property through the use of a dangerous weapon,

assaulting a federal agent with a deadly or dangerous weapon, and aiding and abetting Hobbs Act robbery – have as an element the use, attempted use, or threatened use of physical force against the person of another, Dickerson's § 924(c) sentence does not depend on § 924(c)(3)'s risk-of-force clause.

### 1. Aiding and Abetting Robbery of United States Property

The Court begins with aiding and abetting robbery of United States property through the use of a dangerous weapon, in violation of 18 U.S.C. § 2114(a) and § 2, as charged in Counts Three and Five of the Indictment. The Eleventh Circuit has held that the related offense of aiding and abetting assault with intent to commit robbery by the use of a dangerous weapon, also under § 2114(a), is a "crime of violence" under § 924(c)(3)'s use-of-force clause, and therefore is not implicated by Johnson. In re Watt, 829 F.3d 1287, 1289-90 (11th Cir. 2016).[8] The only difference here is that Dickerson pled guilty to aiding and abetting robbery by the use of a dangerous weapon, rather than assault with intent to commit robbery by the use of a dangerous weapon. See Plea Agreement at 5-7, 18-20. That distinction makes no difference, because robbery under § 2114(a) still has as an element the taking of property "by means of force and violence" or "by means of intimidation," Pattern Crim. Jury Instr. 11th Cir. OI O77 (2016), which necessarily

---

[8]     Dickerson dismisses as dicta In re Watt's statement that aiding and abetting assault with intent to commit robbery of United States property is a "crime of violence" under § 924(c)(3)(A). Supplemental Reply at 2, 8. Dickerson is incorrect. That statement was essential to the holding that Watt's sentence was not implicated by Johnson, and therefore that his application to file a second or successive motion to vacate should be denied. Because the statement was necessary to the holding, it is not dicta. See Powell v. Thomas, 643 F.3d 1300, 1304-05 (11th Cir. 2011) ("[D]icta is defined as those portions of an opinion that are 'not necessary to deciding the case then before us,' whereas holding is comprised both of the result of the case and 'those portions of the opinion necessary to that result by which we are bound.'") (quoting United States v. Kaley, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009)).

encompasses the use, attempted use, or threatened use of physical force, In re Smith, 829 F.3d 1276, 1280 (11th Cir. 2016) ("Stated another way, an element requiring that one take or attempt to take by force and violence or by intimidation, which is what the federal carjacking statute does, satisfies the force clause of § 924(c).") (citing United States v. Moore, 43 F.3d 568, 572-73 (11th Cir. 1994)). And if that were not enough, the fact that Dickerson admitted to the additional element of putting the victims' lives in jeopardy by using a dangerous weapon, i.e., a loaded .40 caliber gun, doubtlessly introduced the use, attempted use, or threatened use of physical force as an element. See Plea Agreement at 5-6, 18-19, 22-23.[9] Indeed, in United States v. Enoch, the Seventh Circuit held that robbery under § 2114(a), where the defendant used a dangerous weapon, is a crime of violence under § 924(c)(3)(A) because of the element of putting the victim's life in jeopardy through the use of a deadly weapon. 865 F.3d 575, 580-82 (7th Cir. 2017).[10] Likewise, in the bank robbery context, the Eleventh Circuit has found that the use of a dangerous weapon to effect the robbery, in conjunction with taking the property by force and violence or by fear, made the offense a "crime of violence" under § 924(c)(3)'s use-of-force clause. In re Hines, 824 F.3d 1334, 1336-37 (11th Cir. 2016). Accordingly, Dickerson's § 924(c) conviction and

---

[9]     Under § 2114(a), putting the victim's life in jeopardy by the use of a dangerous weapon is an element of the crime because it increases the maximum prison sentence from 10 years to 25 years. 18 U.S.C. § 2114(a). A fact that increases the maximum sentence (other than the fact of a prior conviction), such as putting the victim's life in jeopardy by the use of a dangerous weapon, is considered an element of the offense. See Mathis v. United States, 136 S. Ct. 2243, 2256 (2016) ("When statutory alternatives carry different punishments … they must be elements.") (citing Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)).

[10]     Enoch did not involve aiding and abetting, but as the Eleventh Circuit explained in In re Watt, the fact that a defendant "was charged under the aiding and abetting statute is of no moment." In re Watt, 829 F.3d at 1289-90. That is because "'[a] person who aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principal,' and so 'the acts of the principal become those of the aider and abettor as a matter of law.'" Id. at 1290 (quoting In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016)).

sentence did not depend on § 924(c)(3)(B) because both of his convictions under Counts Three and Five qualify as a "crime of violence" under § 924(c)(3)(A).

### 2. Assaulting a Federal Agent With a Deadly or Dangerous Weapon

The Eleventh Circuit Court of Appeals recently joined five other circuits in concluding that assaulting a federal agent under "§ 111(b) categorically qualifies as a crime of violence under § 924(c)'s elements clause." United States v. Bates, 960 F.3d 1278, 1287 (11th Cir. 2020); accord United States v. Kendall, 876 F.3d 1264, 1269-71 (10th Cir. 2017) (a § 111(b) offense categorically entails the actual or threatened use of violent physical force for purposes of the "crime of violence" definition in U.S.S.G. § 4B1.2(a)); United States v. Taylor, 848 F.3d 476, 492-93 (1st Cir. 2017) ("In fact, every court we are aware of that has considered [whether § 111(b) is a crime of violence] has found that it is because the elements of the enhanced offense require the use, attempted use, or threatened use of force capable of causing pain or injury."); United States v. Rafidi, 829 F.3d 437, 445-46 (6th Cir. 2016) (assaulting a federal agent with a deadly or dangerous weapon, in violation of § 111(b), is a "crime of violence" under § 924(c)(3)'s elements clause, and therefore is not implicated by Johnson); United States v. Hernandez-Hernandez, 817 F.3d 207, 214-217 (5th Cir. 2016) (holding that assault under § 111(b) is a crime of violence under U.S.S.G.. § 2L1.2(b)(1)(A)(ii)); United States v. Juvenile Female, 566 F.3d 943, 947-48 (9th Cir. 2009) (holding that § 111(b) is a crime of violence under the elements clause of 18 U.S.C. § 16).

Dickerson counters that § 111(b) is divisible because it requires that there be an assault under § 111(a), and the definition of assault under § 111(a) is itself divisible. Dickerson's Reply at 9-10. That may be true, but it is irrelevant. Even if the underlying

meaning of assault is divisible, § 111(b) necessarily requires that the defendant either (1) use a deadly or dangerous weapon or (2) inflict bodily injury. See 18 U.S.C. § 111(b). As the Eleventh Circuit explained, "[e]ach prong of § 111(b) transforms a § 111(a) act into a crime of violence." Bates, 960 F.3d at 1286. Specifically, "[t]he use of a deadly weapon under § 111(b) transforms a § 111(a) act into a crime of violence." Id. at 1287 (emphasis in original). Likewise, the Sixth Circuit held that the added element of using a deadly or dangerous weapon is enough to introduce as an element the use, attempted use, or threatened use of physical force against the person of another. Rafidi, 829 F.3d at 445-46. Accordingly, Dickerson's conviction under Count Six for assaulting a federal agent with a deadly or dangerous weapon is a "crime of violence" under § 924(c)(3)(A). As such, Count Six further supports the conclusion that Dickerson's § 924(c) sentence does not depend on § 924(c)(3)'s risk-of-force clause.

### 3. Aiding and Abetting Hobbs Act Robbery

Finally, the offenses of aiding and abetting Hobbs Act robbery, as charged in Counts Two and Four of the Indictment, could also serve as predicate offenses for the § 924(c) conviction under § 924(c)(3)(A). The Court recognizes that Dickerson did not plead guilty to Counts Two and Four themselves. However, for purposes of the § 924(c) charge, Dickerson did admit that he brandished a firearm in furtherance of the "crimes of violence" alleged in Counts One through Six of the Indictment, including Counts Two and Four. Plea Agreement at 6, 20; Plea Tr. at 57. And the Eleventh Circuit has held that a "conviction under section 924(c) does not require either that the defendant be convicted of or charged with the predicate offense." Frye, 402 F.3d at 1127.

> Instead, § 924(c) requires only that the predicate crime be one that may be prosecuted. To satisfy that requirement, the government must show that the defendant used or carried a firearm during and in relation to a crime of violence or drug-trafficking crime, and the factual proffer can be a sufficient basis for a district court to determine that a defendant committed the underlying drug-trafficking crime [or crime of violence].

In re Navarro, 931 F.3d at 1302 (internal citations omitted) (alteration added); see also United States v. Richards, 721 F. App'x 843, 846 (11th Cir. 2017) ("Richards admitted as part of his guilty plea that he in fact committed the offense of carjacking, even if he was not convicted of that offense. Thus, the fact that he was not convicted of carjacking does not undermine his § 924(c) conviction for discharging a firearm during and in relation to the predicate offense of carjacking."), cert. denied, 138 S. Ct. 2012 (2018). Thus, under Frye and Navarro, the Court may consider whether aiding and abetting Hobbs Act robbery, as charged in Counts Two and Four of the Indictment, qualifies as a crime of violence under § 924(c)(3)(A). But first, the Court must be satisfied that "the factual proffer can be a sufficient basis … to determine that [Dickerson] committed the underlying [crimes of violence]." In re Navarro, 931 F.3d at 1302.

As used in the Hobbs Act, "[t]he term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property...." 18 U.S.C. § 1951(b)(1). In Count Two the United States charged Dickerson and his co-defendant with aiding and abetting each other in committing robbery by "unlawfully tak[ing] and obtain[ing] personal property, that is a cellular telephone, from the person … of another, that is E.J., against her will, by means of actual and threatened force, violence and fear of injury to E.J. and the person of anyone in E.J.'s company," and that in doing so their actions affected interstate commerce. Indictment at

2. Likewise, in Count Four the United States charged Dickerson and his co-defendant with aiding and abetting each other in committing robbery by "unlawfully tak[ing] and obtain[ing] personal property, that is a cellular telephone, from the person … of another, that is L.C., against her will, by means of actual and threatened force, violence and fear of injury to L.C. and the person of anyone in L.C.'s company," and that in doing so their actions affected interstate commerce. Id. at 3. When Dickerson pled guilty to the § 924(c) charge, he admitted to brandishing a firearm in furtherance of the crimes of violence charged in Counts One through Six of the Indictment, including the Hobbs Act robbery charges described above, and that he committed those offenses. Plea Agreement at 6, 20; Plea Tr. at 57 ([THE COURT]: "With regard to Mr. Dickerson, Count Seven, do you admit that … you committed the crime of violence charged in Counts One, Two, Three, Four, Five, and Six of the indictment? [DICKERSON]: Yes, sir.").

As part of the factual basis, Dickerson admitted that he and the co-defendant went to a Homewood Suites hotel in Jacksonville, Florida late in the evening on March 20, 2010, where they believed they would be meeting out-of-town prostitutes (who were actually undercover law enforcement officers). Plea Agreement at 22; Plea Tr. at 39. After a brief negotiation over sex acts and price, Dickerson and the co-defendant stood up and drew their firearms. Plea Agreement at 22-23; Plea Tr. at 39. Dickerson brandished a Smith & Wesson .40 caliber pistol loaded with two rounds, one of which was chambered. Plea Agreement at 22-23; Plea Tr. at 39. Dickerson pointed his gun at E.J. and demanded, "Where is the money?" Plea Agreement at 23; Plea Tr. at 39-40. Dickerson and the co-defendant then took E.J.'s and L.C.'s cell phones. Plea Agreement at 23; Plea Tr. at 40. At one point, Dickerson removed the magazine from his gun to show E.J. and L.C. that

"there's bullets in there." Plea Agreement at 23; Plea Tr. at 40. Police officers and a Secret Service agent who were monitoring the undercover operation from a nearby room intervened once they saw the robbery taking place, prompting Dickerson to point his gun at the Secret Service agent before fleeing the room. Plea Agreement at 23; Plea Tr. at 40. Police officers eventually surrounded and apprehended Dickerson in a nearby creek. Plea Agreement at 23; Plea Tr. at 40. Dickerson admitted that "[t]he robberies directly affected commerce." Plea Agreement at 25; Plea Tr. at 43. The robberies caused Homewood Suites, a national hotel franchise that caters to interstate travelers and is owned by a Louisiana corporation, to incur more than $3,000.00 in losses. Plea Agreement at 22, 25; Plea Tr. at 38, 43.

The above factual basis establishes that Dickerson unlawfully took or obtained "personal property from the person … of another, against h[er] will, by means of actual or threatened force, or violence, or fear of injury … to h[er] person...." 18 U.S.C. § 1951(b)(1). The factual basis also establishes that Dickerson's actions affected interstate commerce. Thus, the Court is satisfied that "the factual proffer can be a sufficient basis … to determine that [Dickerson] committed the underlying [crime of violence]" of aiding and abetting Hobbs Act robbery, as charged in Counts Two and Four. In re Navarro, 931 F.3d at 1302.

The Eleventh Circuit has held that substantive Hobbs Act robbery is a "crime of violence" under the use-of-force clause in § 924(c)(3)(A). In re Saint Fleur, 824 F.3d 1337, 1340-41 (11th Cir. 2016). And "[b]ecause an aider and abettor is responsible for the acts of the principal as a matter of law, an aider and abettor of a Hobbs Act robbery necessarily commits all the elements of a principal Hobbs Act robbery." In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016) (citing United States v. Williams, 334 F.3d 1228, 1232 (11th Cir.

2003)). Thus, "aiding and abetting a Hobbs Act robbery [also] qualifies as a 'crime of violence' under the § 924(c)(3)(A) use-of-force clause, without regard to the § 924(c)(3)(B) residual clause." Id.

Accordingly, the aiding-and-abetting Hobbs Act robbery charges contained in Counts Two and Four of the Indictment, which Dickerson admitted were predicate crimes of violence for the § 924(c) offense, provide an adequate and independent basis for the § 924(c) conviction. Therefore, Dickerson's conviction for brandishing a firearm in furtherance of a crime of violence does not depend on § 924(c)(3)(B)'s risk-of-force clause, and he is not entitled to relief under Davis, 139 S. Ct. 2319, or Johnson, 135 S. Ct. 2551.

### III.    Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Dickerson seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dickerson "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner

must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. The stay previously entered on February 25, 2019 (Civ. Doc. 21) is **LIFTED** and the case is **ADMINISTRATIVELY REOPENED**.

2. Petitioner Adrian Dominic Dickerson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1) is **DENIED**.

3. Dickerson's motions to appoint counsel (Civ. Doc. 11; Civ. Doc. 16) are **DENIED AS MOOT**.

4. The United States' Motion to Dismiss for untimeliness (Civ. Doc. 7) is **DENIED AS MOOT** because the Motion to Vacate is denied on the merits.

5. The Clerk shall enter judgment in favor of the United States and against Adrian Dominic Dickerson, and close the file.

6. If Dickerson appeals the denial of the Motion to Vacate, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.

Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 10th day of September, 2020.

MARCIA MORALES HOWARD
United States District Judge

lc 19

Copies:
Counsel of record
Pro se petitioner